IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSHUA O'NEAL WHITE, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION No. H-12-0195 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent*. | § | |

**MEMORANDUM OPINION AND ORDER**

Joshua O'Neal White, a state inmate proceeding *pro se* and *in forma pauperis*, files this section 2254 habeas petition challenging his convictions and sentences. Respondent filed a motion for summary judgment based on expiration of limitations (Docket Entry No. 13), to which petitioner filed a response (Docket Entry No. 20).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit as barred by limitations.

**I. BACKGROUND AND CLAIMS**

Petitioner pleaded guilty to three counts of aggravated robbery with a deadly weapon on July 20, 2009, in Harris County, Texas, and was sentenced to three concurrent twenty-five year terms of imprisonment on October 15, 2009. Petitioner did not pursue direct appeal. His applications for state habeas relief, filed on November 3, 2010, were denied by the Texas Court of Criminal Appeals on November 9, 2011.

Petitioner filed the instant federal habeas petition on January 11, 2012, raising the following claims for ineffective assistance of trial counsel:

1. Trial counsel advised him to make a self-incriminating statement.

2. Trial counsel failed to:

    a. investigate the case fully;

    b. explain completely the pre-sentence investigation report process or the nature and elements of the charges;

    c. inform him of the State's evidence against him;

    d. call or cross examine witnesses or present argument on his behalf;

    e. file an appeal.

Respondent argues that petitioner's claims are barred by the applicable one-year statute of limitations and should be dismissed. Respondent further asserts that petitioner failed to exhaust two of his claims and that those claims are procedurally defaulted.

## II. THE APPLICABLE LEGAL STANDARDS

A. <u>Habeas Review</u>

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28

U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31.

B.    <u>Summary Judgment</u>

In deciding a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### III. LIMITATIONS

The instant petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, federal habeas corpus petitions are

subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

> (d)(1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §§ 2244(d)(1), (2).

In the instant case, the one-year limitation commenced on November 14, 2009, when petitioner's conviction became final by the expiration of time to seek direct review. *See* TEX. R. APP. PROC. 26.2(a); *Gonzalez v. Thaler*, __U.S.__, 2012 WL 43513, *9 (2012). Accordingly, petitioner's federal petition was due by November 14, 2010, absent tolling.

Petitioner's applications for state habeas relief were filed on November 3, 2010, eleven days prior to expiration of limitations, and were denied on November 9, 2011. Because these state habeas applications were filed prior to expiration of federal limitations, they tolled limitations during their pendency. Consequently, petitioner's federal petition was due by November 20, 2011. However, petitioner did not file the instant federal habeas petition until January 11, 2012, nearly two months late, and the petition is untimely.

In his response to the motion for summary judgment, petitioner argues that his federal petition should be deemed timely filed because,

> according to [28 U.S.C.] § 2255, habeas corpus petition [sic] should be deemed 'filed' when petition is handed over to prison authorities for mailing. The failure of the Clerk to actually 'file' the complaint until November 3, 2010, does not indicate that the complaint 'was not actually in the custody of the Clerk.' Furthermore, petitioner has no control over the clerk['s] delay in actually filing the Petition or complaint, which he mail [sic] on September 14, 2010.

(Docket Entry No. 20, p. 1, citations omitted.) Petitioner further states that he filed a second state application on October 2, 2010, because the state courts never notified him that his application had been accepted. *Id.*, p. 2. He also complains that at undisclosed times he had asked the courts "how can I get an appeal going" and for copies of section 11.07 forms, but without success. *Id.*

Petitioner did not file his response under oath or penalty of perjury, and he presents no probative summary judgment evidence that he handed his state habeas applications to prison authorities for mailing on September 14, 2010. Regardless, the Fifth Circuit has

6

declined to extend the "mailbox rule" to the determination of filing dates for state habeas applications for purposes federal limitations. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).

The state court records reveal that petitioner signed each of his three state habeas applications on October 24, 2010, and that they were received by the state court on November 3, 2010. The state court sent petitioner three separate letters to his address of record on November 3, 2010, notifying him that his applications had been received and filed on that date. (Docket Entries No. 11-21; 11-24; 11-26.) On August 29, 2011, petitioner sent a letter to the state courts complaining of their delay in processing his habeas proceedings; in the letter petitioner stated that his habeas applications had been filed on November 3, 2010. Thus, it is without dispute that, when petitioner's habeas applications were denied on November 9, 2011, he knew that they had been filed on November 3, 2010. The record shows that petitioner had the information necessary to calculate correctly his time remaining under the one-year limitation. Petitioner presents no probative summary judgment evidence showing entitlement to equitable tolling or that his state habeas applications were filed on any date other than November 3, 2010. The instant federal petition is untimely, and respondent is entitled to summary judgment dismissing the petition as barred by limitations.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Even assuming petitioner's claims were not barred by limitations, they are without merit. The Sixth Amendment to the United States Constitution guarantees a criminal

defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.

*Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner alleges the following instances of ineffective assistance of trial counsel.

A.  <u>Self-incriminating statement</u>

Petitioner claims that trial counsel advised him to make a self-incriminating statement by writing a letter for his presentencing investigation report.

In his affidavit submitted to the trial court on collateral review, trial counsel testified regarding petitioner's claim as follows:

> I was appointed to represent [petitioner] in three separate cases in the 178th District Court. In all three cases the Defendant was charged with aggravated robbery. I was also appointed to represent [him] in his Motion to Adjudicate. At the time [petitioner] was on a four year deferred adjudication for the offense of aggravated assault. After being appointed I started to work on [petitioner's] cases. I talked to [petitioner] on numerous occasions. I reviewed the offense reports in all the cases. I contacted all the witnesses on the cases and talked to those who were cooperative. My investigation revealed the following:
>
> On December 14, 2008, the Applicant was accused of entering a Game Stop on Highway 59 in Houston. There he showed a gun to the clerk and stole cash and property totaling $3,766.95. The store clerk identified Applicant in a photo spread.
>
> On December 22, 2008 the Applicant allegedly entered a Game Stop on Fry Road. He pulled a handgun on the clerk (Ms. Johnson). Applicant took $1,750.00. [Petitioner] was identified in a photo spread by Ms. John[s]on.

9

On January 2, 2009 the Applicant was implicated in the aggravated robbery of a Game Stop on the East Freeway in Houston. The complainant alleged that [petitioner] had displayed a handgun and stole cash and merchandise. While investigating the robbery officers heard over the police radio reports of a robbery at Game Crazy on Woodforest Boulevard. The Applicant was a suspect in this robbery but was not charged in this case. That same evening officers were dispatched to a Game Stop on Sam Houston Parkway. There [petitioner] was arrested. When arrested he was found in possession of a silver Ruger. Evidence found linked [petitioner] to the other robberies. His companion, Lee Carter, was found in possession of an air gun.

Further investigation revealed that [petitioner] had two pending cases for two separate aggravated robberies in Brazoria County. These cases were to be handled in that jurisdiction after his Harris County cases were finalized.

I fully informed [petitioner] of all the information I had collected. I reviewed all the evidence the State had collected in his cases with [petitioner]. We discussed all the options available to [him]. [Petitioner] wanted community supervision. I told him that was not possible. He was not eligible for probation from a jury as he was on Deferred Adjudication for Aggravated Assault. I explained to [petitioner] the dangers of going to trial. In particular I pointed out the possibility that if [he were] found guilty evidence of all the other alleged crimes could be introduced at the penalty phase.

After discussing all the options with [petitioner] he decided to plead guilty and have the court assess punishment after the preparation of a presentence investigation report. I thoroughly discussed this process with [petitioner] and it is my opinion that he understood all the admonishments and plea papers. [He] understood the consequences of pleading guilty. I believe [he] entered into his plea of guilty knowingly, intelligently, and voluntarily. [Petitioner] asked on numerous occasions if this was the best way to get the least amount of time. This was not the first time [petitioner] had entered a plea of guilty in a felony case. [He] knew exactly what he was doing and he was well aware of the enormous exposure he risked if he had decided to go to trial. I did not file [a] Motion for Appointment of Investigator. I did not feel it was necessary since the case was not going to be tried. *I advised [petitioner] to tell the truth in the report and accept responsibility for his actions. Instead [he] was not truthful and he minimized his role in the crimes. This is the only incriminating statement made by the Applicant after I was appointed on the cases. It was in no way used as in [sic] any manner by the State to further prosecution. It was*

> *made well after [petitioner] had entered a plea of guilty in the cases. It is standard to have such a statement contained in a presentence investigation report.*

(Docket Entry No. 11-26, pp. 68–69, emphasis added.) The trial court expressly found that the facts asserted by counsel in his affidavit were true and credible. *Id.*, p. 72.

In rejecting petitioner's claims on collateral review, the trial court made the following relevant finding:

> 4. The Court finds based on the credible affidavit of [trial counsel] and the court reporter's record of the PSI hearing that [trial counsel] advised the applicant to tell the truth and accept responsibility for his actions but the applicant disregarded [trial counsel's] advice and minimized his role in the aggravated robberies that he was charged with. The Court further finds that the applicant's statement was made after he plead[ed] guilty to the court, but before he was sentenced by the court.

(Docket Entry No. 11-26, p. 73, record citations omitted.) The trial court concluded that petitioner failed to establish either deficient performance or prejudice under *Strickland. Id.*, p. 74. The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

By presenting nothing more than his subjective disagreement with the state court's ruling and restating arguments already rejected by the state court, petitioner fails to meet his burden of proof for relief under the AEDPA standards for review. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown.

11

B.  <u>Failure to investigate</u>

Petitioner states, without further explanation or supporting factual allegations, that trial counsel advised him, "without doing a full research, that the best thing for me to do was a presentence investigation (PSI)."

In his affidavit submitted to the trial court on collateral review, trial counsel testified regarding petitioner's claim as follows:

> I fully informed [petitioner] of all the information I had collected. I reviewed all the evidence the State had collected in his cases with [petitioner]. We discussed all the options available to [him]. [Petitioner] wanted community supervision. I told him that was not possible. He was not eligible for probation from a jury as he was on Deferred Adjudication for Aggravated Assault. I explained to [petitioner] the dangers of going to trial. In particular I pointed out the possibility that if [he were] found guilty evidence of all the other alleged crimes could be introduced at the penalty phase.
>
> After discussing all the options with [petitioner] he decided to plead guilty and have the court assess punishment after the preparation of a presentence investigation report. I thoroughly discussed this process with [petitioner] and it is my opinion that he understood all the admonishments and plea papers. [He] understood the consequences of pleading guilty. I believe [he] entered into his plea of guilty knowingly, intelligently, and voluntarily. [Petitioner] asked on numerous occasions if this was the best way to get the least amount of time. This was not the first time [petitioner] had entered a plea of guilty in a felony case. [He] knew exactly what he was doing and he was well aware of the enormous exposure he risked if he had decided to go to trial. I did not file [a] Motion for Appointment of Investigator. I did not feel it was necessary since the case was not going to be tried.

(Docket Entry No. 11-26, p. 68–69.)

In rejecting petitioner's claims, the trial court made the following relevant finding and conclusion:

12

> 3. The Court finds based on the credible affidavit of [trial counsel] that [trial counsel] communicated with the applicant the information he collected and reviewed during his investigation of the applicant's case.

*Id.*, p. 73 (record citations omitted). The trial court concluded that:

> 2. The applicant fails to establish that trial counsel was deficient for failing to fully investigate, as he does not allege or show what a more thorough, in-depth investigation would have revealed.

*Id.*, p. 74 (citation omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

Petitioner establishes neither deficient performance nor prejudice. He fails to present probative evidence of any relevant and beneficial information that further investigation would have revealed or that, but for counsel's failure to perform such investigation, the results of the proceedings would have been different. *See Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (holding that habeas petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial").

By presenting nothing more than his subjective disagreement with the state court's ruling and restating arguments already rejected by the state court, petitioner fails to meet his burden of proof for relief under the AEDPA standards for review. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown.

13

### C. Failure to explain

Petitioner claims that trial counsel failed to explain completely the presentence investigation report process or the nature and elements of the criminal charges.

As correctly noted by respondent (Docket Entry No. 13, p. 4), petitioner did not raise this issue on state collateral review and the issue is procedurally defaulted and barred from consideration by this Court. *See Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997); 28 U.S.C. § 2254(b), (c). Petitioner did not respond to this argument in his response to the motion for summary judgment, and he establishes neither good cause for the default nor actual prejudice. *Id.* Federal habeas relief is unwarranted.

### D. Failure to inform him of the evidence against him

Petitioner asserts that trial counsel failed to inform him of what evidence the State had against him.

In his affidavit submitted to the trial court on collateral review, trial counsel testified regarding petitioner's claim as follows:

> I fully informed [petitioner] of all the information I had collected. *I reviewed all the evidence the State had collected in his cases with [petitioner]*. We discussed all the options available to [him]. [Petitioner] wanted community supervision. I told him that was not possible. He was not eligible for probation from a jury as he was on Deferred Adjudication for Aggravated Assault. I explained to [petitioner] the dangers of going to trial. In particular I pointed out the possibility that if [he were] found guilty evidence of all the other alleged crimes could be introduced at the penalty phase.

(Docket Entry No. 11-26, p. 68, emphasis added.)

14

In denying habeas relief, the trial court found that "trial counsel communicated with the applicant the information he collected and reviewed during his investigation of the applicant's case." *Id.*, p. 73. The trial court concluded that petitioner failed to meet his burden of proving deficient performance and actual prejudice under *Strickland*. *Id.*, p. 74. The Texas Court of Criminal Appeals expressly relied on the trial court's findings in denying habeas relief.

By presenting nothing more than his subjective disagreement with the state court's ruling and restating arguments already rejected by the state court, petitioner fails to meet his burden of proof for relief under the AEDPA standards for review. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown.

E. <u>Failure to cross examine, call witnesses, or present argument</u>

Petitioner asserts, without further explanation or supporting factual allegations, that he has a constitutional right to compulsory process and cross examination, and that trial counsel violated those rights by failing to cross examine the State's witnesses or call defense witnesses.

In rejecting this claim on collateral review, the trial court made the following finding:

> 5. The Court finds that the applicant was admonished and understood that when he entered into this plead of guilty that he waived his right to require the appearance, confrontation, and cross-examination of witnesses.

(Docket Entry No. 11-26, p. 73, record citations omitted.) The trial court concluded that petitioner failed to establish deficient performance or prejudice under *Strickland*, and that:

> 3. The applicant fails to show what witnesses were available to testify on his behalf and that their alleged testimony would have been beneficial to his defense.

*Id.*, p. 74 (citation omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable. *Gregory v. Thaler*, 601 F.3d 347, 352–353 (5th Cir. 2010). Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony. *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007). The decision whether to present a witness is considered to be essentially strategic, and "speculations as to what [uncalled] witnesses would have testified is too uncertain." *Gregory*, 601 F.3d at 353.

As found by the trial court, petitioner failed to show what witnesses were available to testify on his behalf and that their alleged testimony would have been beneficial to his defense, and habeas relief is unwarranted under this claim. Further, as found by the trial court, petitioner waived his right to the confrontation, appearance, and cross examination of witnesses as part of his guilty plea. Petitioner presents no probative summary judgment

evidence, and does not direct this Court to any support in the record, for his claim that trial counsel was ineffective in failing to cross examine witnesses, present defense witnesses, or make any particular argument at any particular point. To any extent that petitioner is complaining that trial counsel did not object to the State's argument that petitioner had a "real" gun, nothing in the record establishes that the weapon in petitioner's possession at the time of his arrest was not an actual firearm.

By presenting nothing more than his subjective disagreement with the state court's ruling and restating arguments already rejected by the state court, petitioner fails to meet his burden of proof for relief under the AEDPA standards for review. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown.

F.  Failure to file an appeal

Petitioner claims that trial counsel failed to file an appeal. As correctly noted by respondent (Docket Entry No. 13, p. 4), petitioner did not raise this issue on state collateral review and the issue is procedurally defaulted and barred from consideration by this Court. *See Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997); 28 U.S.C. § 2254(b), (c). Petitioner did not respond to this argument in his response to the motion for summary judgment, and he establishes neither good cause for the default nor actual prejudice. *Id.* Federal habeas relief is unwarranted.

To any extent petitioner is asserting that he was denied "equal protection of law" because his trial attorney was ineffective (Docket Entry No. 1, p. 7), the Court has already determined that petitioner has failed to establish ineffective assistance of trial counsel.

## V. CONCLUSION

The motion for summary judgment (Docket Entry No. 13) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**. Any and all pending motions are **DENIED AS MOOT**. A certificate of appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this the 9th day of July, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE